UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHAEL BORUD**, <br><br> Plaintiff, <br><br> v. <br><br> **TERENCE EMMERT**, in his official capacity as Acting Secretary of the Navy, *et al.*, <br><br> Defendants. | Case No. 1:24-cv-01211 (TNM) |

## MEMORANDUM ORDER

Michael Borud is a Navy veteran. He was administratively discharged from the U.S. Navy but maintains he should have been medically retired instead. He asked the Navy to make this change, but it refused. So he sued the Secretary of the Navy,[1] the Department of the Navy, and the Board for Correction of Naval Records (collectively, "the Navy"). The Navy now moves to remand and stay the case pending reconsideration of Borud's request. Borud consents but wants the Court to order more procedural safeguards on remand. Navy regulations already protect Borud's interests though, so it is unnecessary to add a judicial gloss atop the existing rules. The Court thus grants the motion to remand and stay without modifying the Navy's existing procedures.

**I.**

Borud served honorably in the Navy from 1996 until 2005. Compl., ECF No. 1, ¶¶ 2, 5. While in the military, he was diagnosed with a medical condition that physically interfered with

---

[1] Defendant Terence Emmert is Acting Secretary of the Navy, replacing former Secretary Carlos Del Toro. Under Federal Rule of Civil Procedure 25(d), when a public officer sued in an official capacity vacates the office while the action is pending, his successor is automatically substituted as a party.

his job performance.  Compl. ¶¶ 3–5.  This led the Navy to administratively discharge him.  Compl. ¶ 11.  But Borud believes he should have been medically retired instead—an outcome that would have given him more benefits.  Compl. ¶¶ 5, 11.

In 2022, Borud filed an application with the Board for Correction of Naval Records ("the Board") seeking to change his discharge to a medical retirement.  Compl. ¶ 59.  The Board can modify the details of an applicant's separation to correct an error or injustice.  *See* Compl. ¶¶ 22, 59.  The process starts with an applicant submitting a form to the Board, accompanied by any evidence the applicant feels is relevant.  *See* Secretary of the Navy Instruction ("SECNAVINST") 5420.193 (Nov. 19, 1997), Encl. 3 ¶¶ 4–5.  The Board reviews the material and can solicit advisory opinions from "other naval authorities" such as the Bureau of Naval Personnel to help it decide whether to grant the application.  *Id.* Encl. 3 ¶ 7; *see also* Bureau of Naval Personnel Instruction 5420.21A (Oct. 17, 2011), Encl. 1 (discussing the advisory opinion process).

The Board then votes on whether to grant the application.  SECNAVINST 5420.193, Encl. 1 ¶ 6(a)(3).  If the Board's decision is unanimous, it can take final action without further approval.  *See id.* Encl. 1 ¶ 6(e).  But if the vote is not unanimous, the Board drafts majority and minority reports that go to the Secretary or a delegee for a final decision.  *See id.* Encl. 1 ¶¶ 3(b), 6(b), 7(a).  If the Secretary chooses to deny an application, he must explain his decision in writing unless he "expressly adopts in whole or in part the findings, conclusions and recommendations of the Board, or a minority report."  *Id.* Encl. 1 ¶ 7(a).

After reviewing Borud's application, a non-unanimous majority of the Board recommended granting it.  Compl. ¶¶ 70–71.  So both the majority and minority reports were transmitted up the chain for final action by the Secretary's delegee—the Assistant General

Counsel of the Navy (Manpower and Reserve Affairs).  *See* Mot. Remand and Stay, ECF No. 8, at 2.  The Assistant General Counsel adopted the minority report and denied Borud's application.  Compl. ¶¶ 72–73.  Borud was notified by letter of the decision.  Compl. ¶ 75.

Borud then sued under the Administrative Procedure Act, challenging the denial as arbitrary and capricious.  Compl. ¶¶ 74–79.  He contends the Navy's decision lacked substantial evidence and was contrary to law.  Compl. ¶¶ 74–79.  In response, the Navy moves to stay the case and remand it so the Board can reconsider Borud's application.  Mot. Remand and Stay.  Borud does not oppose remand but asks the Court to ensure he can respond to any adverse advisory opinions and Board recommendations before the Navy's final decision.  Mot. Resp, ECF No. 9, at 1–6.  He also wants the Court to impose a deadline by which the Navy must issue its new decision.  Mot. Resp at 3–5.  The Navy opposes his requests.  *See* Reply, ECF No. 10.  The Court has federal question jurisdiction under 28 U.S.C. § 1331 and now turns to these issues.

## II.

When an agency violates the APA, the usual remedy is to "set aside the agency's action and remand the case—even though the agency (like a new jury after a mistrial) might later, in the exercise of its lawful discretion, reach the same result for a different reason."  *FEC v. Akins*, 524 U.S. 11, 25 (1998).  Courts have done precisely that in response to flawed decisions by the Board.  *See, e.g.*, *Penland v. Mabus*, 181 F. Supp. 3d 100, 106 (D.D.C. 2016) (remanding for the Board "to consider anew" its conclusions because its initial decision was "based on an incomplete picture").  But an agency need not wait for a court order and may preemptively "request a remand, without confessing error, to reconsider its previous position."  *SKF USA Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001).  Courts tend to favor voluntary remands because they conserve resources.  *See Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir.

3

1993) ("[Courts] prefer[] to allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete.").

### III.

Borud does not oppose remand, so the Court grants the Navy's motion to remand and stay the case pending reconsideration. That leaves Borud's requests for additional safeguards.

Borud wants an order ensuring that he gets the chance to respond to any adverse advisory opinions or minority reports before the Navy's final decision. Mot. Resp. at 5–6. But his proposed order is duplicative of existing safeguards.

Consider first the advisory opinions. Navy regulations already guarantee him an opportunity to respond to unfavorable advisory opinions. SECNAVINST 5420.193, Encl. 3 ¶ 7 ("If an advisory opinion is furnished to [the Board] recommending that your application be denied, a copy will be forwarded to you and you will have 30 days in which to respond."). So in essence, Borud wants an order compelling the Navy to follow its own regulations. But he offers nothing to cast doubt on the "general presumption that a federal agency will follow its own regulations." *Theodore Roosevelt Conservation P'ship v. Salazar*, 661 F.3d 66, 79 (D.C. Cir. 2011). The Court presumes the Navy will give Borud a chance to respond to any unfavorable advisory opinions and a preemptive judicial order to that effect is unnecessary.

Next, Borud wants to respond to any adverse minority report lest he "lose out on the opportunity to include evidence or arguments in the administrative record." Mot. Resp. at 6. But the Navy has agreed to give him an extra 30 days on remand to submit supplemental evidence and arguments. Mot. Remand and Stay at 8. Plus, Borud can ask the Navy to reconsider its decision if he uncovers "new and material evidence . . . not reasonably available to [him] at the

4

time" he applied.  SECNAVINST 5420.193, Encl. 1 ¶ 9.  And if all else fails and Borud returns to federal court, he can address the shortcomings in any minority report then.  In sum, Borud's concerns about prejudice are speculative and do not justify judicial micromanagement of the Navy.  *See Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council*, 435 U.S. 519, 543 (1978) ("Absent constitutional constraints or extremely compelling circumstances, the administrative agencies should be free to fashion their own rules of procedure." (cleaned up)).

      Borud also asks the Court to mandate a final decision from the Navy within 180 days of remand.  Mot. Resp. at 2–4.  He warns that without a time limit, the process could be "delayed indefinitely" thereby depriving him of healthcare resources available to medical retirees.  Mot. Resp. at 5.  But timely action is already mandated by statute:  the Board "must" resolve 90 percent of its decisions in 10 months and 100 percent in 18 months.  10 U.S.C. § 1557.  In other words, there is no risk of indefinite delay.  And, as the Navy points out, Borud's concern about healthcare in the interim is unpersuasive because his current disability rating entitles him to "no cost health care."  Reply at 4; *see also* Compl. ¶ 6 (noting Borud's "30% disability rating").

      Still, Borud points to two unpublished orders in which courts imposed deadlines for a final decision on remand.  *See* Mot. Resp. at 3–5.  In both, the parties voluntarily requested the deadlines in their joint motions to remand.  *See Hayden v. Wormuth*, 1:23-cv-02709, Joint Proposed Order, ECF No. 18-1 (proposing remand with a 160-day deadline) (D.D.C. 2024); *Reichert v. Dep't of Def.*, 1:22-cv-01400, Joint Proposed Order, ECF No. 9-2 (proposing remand with a 120-day deadline) (D.D.C. 2022).  That distinction renders the cases inapt because no similar consensus exists here.  Instead, the Navy opposes judicially expediting the process because it could encourage litigation from other Board applicants hoping to jump the queue.  Reply at 5.

Borud also relies on two Court of Federal Claims cases that imposed a deadline on remand. Mot. Resp at 3–4 (citing *Keltner v. United States*, 148 Fed. Cl. 552 (2020) and *Yang v. United States*, 149 Fed. Cl. 277 (2020)). But under the local rules for the Claims Court, remand orders "must . . . establish the duration of the remand period, not to exceed 6 months." Fed. Cl. Rule 52.2(b)(1)(B); *see also Keltner*, 148 Fed. Cl. at 566 n.13 (citing the rule). The local rules for this Court have no comparable provision mandating a specific duration in remand orders.

Borud's cases show that courts do sometimes accelerate the statutory deadlines, but he has offered no compelling reason to do so here. Thus, the Court will not interfere with the Navy's established process for reviewing records correction applications. *See Vermont Yankee*, 435 U.S. at 543.

## IV.

In sum, remand is appropriate and existing regulations already safeguard Borud's interests. For these reasons, it is

**ORDERED** that Defendants' [8] Motion for Voluntary Remand and Stay is **GRANTED**; and it is further

**ORDERED** that this matter is remanded to the Board for Correction of Naval Records with the following directions:

1. The Board shall reconsider its decision in Docket No. NR20220001393 in light of the issues raised in Plaintiff's Complaint in this action;

2. The Board shall address any other issues Plaintiff submits in writing to the Board within 30 days of this remand order, and consider any evidence or arguments in Plaintiff's submission; and

3. The Board shall determine and explain whether Plaintiff is entitled to any relief based

on any errors or injustices found; and it is further

**ORDERED** that Defendants shall file a status report upon the earlier of 30 days after the Board issues its new determination or September 24, 2025, apprising the Court as to the status of the proceedings on remand; and it is further

**ORDERED** that this case is **STAYED** pending further order of the Court.

**SO ORDERED.**

Dated: March 24, 2025                                          TREVOR N. McFADDEN
                                                               United States District Judge